UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL RICHARD,

       Plaintiff,                                       Case No. 12-12516

v.                                             District Judge Avern Cohn
                                                 Magistrate Judge R. Steven Whalen

MICHAEL BOUCHARD, ET AL.,

       Defendants.

                                                                  /

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Michael Bouchard, Brian Spiker, Donald Sheltrown, Gregory Sako, Craig J. Hanselman, and Greg A. Smith's Motion for Summary Judgment [Docket #13], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[1] For the reasons discussed below, I recommend that the motion be GRANTED as to Defendants Michael Bouchard and Brian Spiker, dismissing these Defendants with prejudice, and DENIED as to Donald Sheltrown, Gregory Sako, Craig J. Hanselman, and Greg A. Smith.

**I.  BACKGROUND FACTS**

---

[1] Although Defendants filed a "Motion for Summary Judgment, they argue exclusively that Plaintiff failure to state claims of constitutional violations entitles them to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, the undersigned construes it as a motion to dismiss.

–1–

Plaintiff, now an inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed suit on June 11, 2012 alleging violations of constitutional rights pursuant to 42 U.S.C. § 1983 committed during his October 23, 2009 to June 24, 2010 confinement at the Oakland County Jail.

Plaintiff, an African-American male currently housed at the Richard A. Handlon Correctional Facility in Ionia, Michigan, makes the following factual allegations.

Plaintiff was arrested on October 21, 2009 and charged with armed robbery. *Complaint* at ¶¶ 13-14. Upon being placed in the Oakland County Jail on October 23, 2009 as a pretrial detainee, Plaintiff alleges that he was placed into an overcrowded section of the jail (the "bullpen") where he was forced to sleep on a brick floor. *Id.* at ¶16. He alleges that white pretrial detainees were seldom placed in this section of the jail. *Id.* at ¶17.

During the classification process beginning on October 25, 2009, Plaintiff alleges that he contacted Defendant Bouchard, Oakland County Sheriff, and Defendant Spiker, a Deputy Sheriff, informing them that he had been subject to an attack during a previous prison stint was currently a "marked man." *Id.* at ¶19. He alleges that he requested a single man cell as had been assigned "so many white pretrial detainees." *Id.* at ¶19. He was informed by a non-defendant Deputy that if he wanted a single cell, he should submit written kites, but was informed by Defendant Sheltrown, also a Deputy Sheriff, that single cells were for "weaker inmates." *Id.* at ¶20. Sheltrown also allegedly stated that Plaintiff was "big enough" to defend himself. *Id.* Plaintiff alleges that over the next few weeks,

–2–

younger pretrial detainees who committed assaults or had been assaulted were moved out of the "bullpen" on a regular basis, adding that inmates who were "any other color . . .than black . . . could be moved with no questions asked." *Id.* at ¶22.

Plaintiff alleges that on November 19, 2009, a younger inmate was assaulted and robbed of food items. *Id.* at ¶24. He states the assault victim asked Defendant Sheltrown if he could talk to him in private, but that Sheltrown repeatedly demanded that the victim verbalize his reasons for requesting a private interview. *Id.* at ¶25. Plaintiff alleges that the victim was "clearly . . . terrified with a badly bruised face." *Id.* Plaintiff alleges that he approached Sheltrown's desk and informed him that the victim wanted to speak to the Deputy in private because he had been assaulted. *Id.* He alleges that "the situation almost turned into a protest," before Sheltrown agreed to allow the victim to speak privately and eventually (upon "information and belief") arranged for the attacker to be moved to a segregated area. *Id.*

The same evening, Plaintiff alleges that he requested a single man cell on his own behalf after discovering that the perpetrators of the assault (Woolfolk and Willis) had labeled him a snitch for interceding on behalf assault victim. *Id.* at ¶26. Sheltrown refused the request, stating that "the cell floor" required the presence of older inmates "to keep the trouble down." *Id.* Plaintiff then requested and received a grievance form from Sheltrown, which Plaintiff completed and returned to Sheltrown the same evening. *Id.* at ¶27.

Plaintiff alleges that on November 22, 2009, a well known gang member with a

history of attacking guards and inmates ("Hughes") was placed in the same area. *Id.* at ¶29. Plaintiff states that on November 26, 2009, Woolfolk, Willis, and Hughes kicked, beat, and assaulted him with homemade weapons over the course of over 25 minutes, during which time they repeatedly called him a snitch and stated "Sheltrown wants you dead." *Id.* at ¶31. Plaintiff states that upon the arrival of non-defendant deputies, he was taken to the hospital and placed on life support, noting that he had sustained a skull and orbital bone fractures, facial lacerations, a collapsed lung, and broken ribs. *Id.* ¶31. Plaintiff states that when his family attempted to visit him at the jail on November 26 and December 3, 2009, they were informed by prison staff that he had been placed in segregation for assaulting a deputy, despite the fact that he was currently being hospitalized and had not assaulted a deputy. *Id.* at ¶33.

Plaintiff alleges that he was discharged from the hospital on December 4, 2009 and placed in the "jail hospital" until December 7, 2009. *Id.* at ¶34. He states that on December 7, 2009, Defendant Sako, a Deputy Sheriff, ordered him back to the "bull pen" where he was required to sleep on a brick floor despite having broken ribs. *Id.* at ¶34. Defendant Sako allegedly told Plaintiff "somebody up top don't like your crying and writing grievances all the time on our staff." *Id.* Sako also allegedly told Plaintiff that "you think because black people are on TV now they run something. [You're] going to move prisoner Richard or I will have you shot with a taser." *Id.* Plaintiff states that he complied with Sako's order but requested a grievance form to which Sako replied "you can file your grievances you are well known for that. Maybe the next time you get attacked in

our jail you won't make it to the hospital in time." *Id.* The following morning, Plaintiff alleges that a non-defendant jail nurse, upon observing that Plaintiff had been sleeping on the floor all night, contacted her supervisor who arranged to have Plaintiff transferred back to the jail hospital. *Id.* at ¶35. The same day Plaintiff filed a grievance against Sako for "corruption, retaliation and harassment." *Id.* at ¶36. He alleges that Sako came to the jail hospital after the grievance was filed, telling Plaintiff "alright, we'll see who win[s] prisoner Richard." *Id.*

Plaintiff states that he was placed in a single man cell after being released from the jail hospital, but alleges that on February 9, 2010, he was placed in another single man cell that backed up to the cell where Hughes and Woolfolk were being housed. *Id.* at ¶38. Plaintiff alleges that through the ventilation vents, he could hear the two attackers plotting to murder him before he could testify against them at their criminal trials. *Id.* Upon Plaintiff's request, Defendant Deputy Sheriff Hanselman allowed Plaintiff to move, but kept him on the same cell floor as his attackers. *Id.* When Plaintiff protested his placement on the same cell floor as the attackers, Hanselman threatened to put Plaintiff in "K-block," a section of the jail for mentally disturbed inmates. *Id.* at ¶39. Plaintiff alleges that subsequently, a case worker refused to put him in K-block. *Id.* at ¶40. Plaintiff alleges that when Hanselman's "K-block" plan was foiled, Hanselman ordered Plaintiff back to the "bullpen" area of the jail and "called the jail hospital doctor to have [the] mattress detail removed" so he was again sleeping on a brick floor. *Id.* at ¶43. He alleges that during this time, Sheltrown and Sako walked by him on various occasions

"making faces at [him]." *Id.* at ¶44. After numerous letters and telephone calls by Plaintiff's family, he was reissued a mattress and allowed to return to a single man cell. *Id.* at ¶45.

Plaintiff alleges that during the November, 2009 assault, he lost several teeth and had a broken tooth that caused long term pain and swelling. *Id.* ¶46. He was informed that he was eligible to have his teeth pulled but no other dental work. *Id.* He states that after filing several kites and a grievance and threatening to file a federal lawsuit, Plaintiff was told by Defendant jail nurse Smith that a dental appointment had been made for March 22, 2010. *Id. ¶47.* Plaintiff alleges that he had teeth pulled at the March 22, 2010 appointment and on the same day, a second appointment was scheduled for April 19, 2010. *Id.* However, Plaintiff states that he was denied the April 19, 2010 followup care because he was transferred to MDOC custody on the same day. *Id.* He alleges that Smith deliberately scheduled the dental appointment for the day of his transfer for the purpose of denying him medical care. *Id.* at ¶47.

Plaintiff states that he was transferred back to the Oakland County Jail for the criminal trial of Hughes, Willis, and Woolfolk on May 18, 2009. *Id.* at ¶48. He states that at that time, Smith refused to offer him dental treatment. *Id.* He was transferred back to MDOC custody on May 25, but was again moved to the Oakland County Jail on June 18, 2010. *Id.* All three of the alleged assailants pled guilty on June 21, 2010. *Id.* Plaintiff states that on the next day, two Jail inmates through feces and urine on him. *Id.* Plaintiff filed a grievance against Hanselman, alleging that the deputy allowed the attack to

go forward to harass Plaintiff. *Id.* Plaintiff alleges that Hanselman retaliated for the grievance by placing him in K-block. *Id.* Plaintiff alleges that two days later, Hanselman visited him in K-block, stating that he would not process the grievance because he was being transferred the following day. *Id.* Plaintiff alleges that the same day he was transferred back to MDOC custody, Hughes and Woolfolk were transferred to the same facility on the same day. *Id.* Plaintiff alleges no arrangement was made to ensure his safety until another gang member attempted to assault him with a home made knife, after which time a non-defendant sergeant "had Plaintiff placed in segregation pending transfer." *Id.*

Plaintiff requests injunctive and declaratory relief as well as monetary damages.

## II.     STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419

(6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 676 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

556 U.S. at 679 (internal citations omitted).

### III.   DISCUSSION

**A.   Eighth Amendment Violations Defendants Bouchard, Spiker, Sheltrown, Sako, and Hanselman**

Plaintiff's claims that Defendants Bouchard, Spiker, Sheltrown, Sako, and

Hanselman either failed to protect him from attack or physical harm, or encouraged others to attack him is analyzed under an Eighth Amendment paradigm. The majority of the alleged events occurred while Plaintiff was a pretrial detainee. While a pretrial detainee's rights are based on the Fourteenth Amendment's Due Process Clause, they are analogous to the Eighth Amendment rights of prisoners. *Barber v. City of Salem, Ohio,* 953 F.2d 232, 235 (6th Cir.1992). See *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985) (Eighth Amendment rights extended to pretrial detainees in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial"). As such, the same standard is applied to both the pretrial and post-conviction allegations

### 1. Applicable Law

The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon prisoners. In order for a prisoner to establish an Eighth Amendment violation under § 1983, he must allege and prove an unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification. See *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 346 (1981). Eighth Amendment claims must satisfy a two-prong standard. First, the alleged wrongdoing must be "objectively harmful enough" to establish a constitutional claim (objective component). Second, the prison official must act with the requisite state of mind (subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component is contextual and responsive to "contemporary standards

of decency." *Hudson,* 503 U.S. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Supreme Court has clearly held that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id*. at 9. Therefore, a prisoner need not show a significant injury. *Id*.; *Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir.1993) (citing *Hudson* to conclude that the extent of injuries does not provide a basis for dismissal).

In regard to the subjective component, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977,128 L.Ed.2d 811 (1994). In order to establish a constitutional claim, the *Farmer* Court held that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### 2. Defendants Bouchard, Spiker

Plaintiff alleges that two days after his arrival at the Jail, he informed Oakland County Sheriff Bouchard and "classification director" Deputy Sheriff Spiker by way of a "communication kite" that he was a "marked man." *Complaint* at ¶19. He makes no other allegations against these Defendants.

The allegation that Bouchard and Spiker received and presumably read the October 25, 2009 kites stating that Plaintiff faced serious harm if placed in the general prison population would seem to state an Eighth Amendment claim. *Farmer v. Brennan,* 511

U.S. at 834; *Williams v. McLemore,* 247 Fed.Appx. 1, *11, 2007 WL 1748146, *9 (6th Cir. June 19, 2007)(grievance recipient's possible "knowledge of the risk" faced by inmate created a question of fact sufficient to survive summary judgment on Eighth Amendment claims). However, Plaintiff does not allege that the November 26, 2009 attack was the result of his alleged status as a "marked man," as alleged in the kite to Bouchard and Spiker. Rather, Plaintiff states that he was attacked because (1) he was perceived as a snitch for reporting the attack of a younger inmate to Sheltrown and (2) Sheltrown placed Plaintiff in harm's way in retaliation for the filing of a grievance. *Complaint* at ¶¶27-31. Because Plaintiff has failed to make a causal connection between Bouchard or Spiker's alleged failure to act and the November 26, 2009 attack, claims against them must be dismissed.

### 3. Defendants Sheltrown, Sako, and Hanselman

In contrast, Plaintiff has sufficiently articulated deliberate indifference claims against Defendants Sheltrown, Sako, and Hanselman. Plaintiff, alleging that his safety was in peril because was considered a snitch after interceding on behalf of the younger prisoner, states that he passed this information on to Sheltrown both verbally and by grievance prior to the attack but that Sheltrown refused his requests for a transfer. *Complaint* at ¶¶26-27. Sheltrown's alleged failure to act upon the knowledge that Plaintiff had been identified as a snitch and was thus vulnerable to attack by other prisoners states a claim of deliberate indifference. *Comstock v. McCrary,* 273 F.3d 693, 699, fn 2 (6th Cir. 2001)(noting defendant's acknowledgment that "a prisoner in prison definitely

doesn't want to be labeled a snitch, that's probably the worst label that you . . . could have put on you if you were in prison").

Likewise, allegations that Defendant Sako ordered Plaintiff to sleep on a brick floor or be "tasered" (despite the fact that he had broken ribs, a bandaged chest, and facial fractures as a result of the November 26, 2009 beating) states a claim of deliberate indifference. *Id.* at ¶34. While Plaintiff has not alleged an additional injury as a result of being forced to sleep on a brick floor the night after being released from the jail hospital, Sako's alleged comments that "somebody up top don't like your crying and writing grievances all the time on our staff" sufficiently alleges that Sako acted with malice in ordering Plaintiff to sleep on the floor.[2] See *Hudson, supra*; *Moore v. Holbrook*, 2 F.3d at 701. Likewise, Plaintiff's allegations that Hanselman placed him back in the "bullpen," and forced him to sleep on a brick floor after his attempts to put Plaintiff in the cell block for mentally disturbed inmates was thwarted by a case manager, states a claim. *Complaint* at ¶¶39-44. Plaintiff's claim that Hanselman acquiesced to a May, 2010 assault on Plaintiff by other prisoners also states an Eighth Amendment claim.

### B. Retaliation Claims Against Sheltrown, Sako, and Hanselman

#### 1. Applicable Law

---

[2]Further, Plaintiff has alleged that a jail nurse, upon discovering that Plaintiff had spent the night on a hard floor, arranged to have him transferred back to the jail hospital. *Complaint* at ¶35.

Plaintiff's allegations that Defendants Sheltrown, Sako, and Hanselman harassed him, failed to protect him, or actively encouraged other to assault him in response to his grievances against them is construed as a First Amendment retaliation claim. In *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

### 2. Application to the Present Case

Plaintiff's grievances against Sheltrown, Sako, and Hanselman constitute protected conduct. Inmates have an "'an undisputed First Amendment right to file grievances against prison officials on [their] own behalf.'" *Thomas v. Eby,* 481 F.3d 434, 440 (6th Cir. 2007)(citing *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir.2000)). As to the "adverse action" element of a retaliation claim, the plaintiff must show that the alleged "retaliatory act would deter a person from exercising his rights." *Siggers–El v. Barlow,* 412 F.3d 693, 701 (6th Cir.2005). "[H]arassment, physical threats, and transfer to the area of the prison used to house mentally disturbed inmates," constitute adverse actions "likely have a strong deterrent effect." *Thaddeus-X,* 175 F. 3d at 398.

The Complaint contains numerous factual allegations of adverse actions by these Defendants in addition to the alleged Eighth Amendment violations detailed in the

–13–

previous section. The allegation that Sheltrown acquiesced to the November 26, 2009 assault after Plaintiff filed a grievance against him states both an Eighth Amendment claim and a First Amendment retaliation claim. Sako's alleged observation that Plaintiff was "well known" for filing grievances and suggestion that Plaintiff "next time" would not "make it to the hospital in time," by itself, states a protected activity, adverse action, and causal connection between the two sufficient to state a claim of retaliation. *Complaint* at ¶34. The allegation that Plaintiff was placed in section of the prison reserved for mentally ill inmates by Hanselman the day after Plaintiff filed a grievance against him likewise states all three elements of a retaliation claim. *Id.* at ¶48.

### C. Eighth Amendment Claims Against Smith

Allegations that Defendant Smith, a jail nurse, failed to arrange adequate dental care after Plaintiff's teeth were either lost or broken during the November 26, 2009 attack is construed as a Eighth Amendment "failure to treat" claim. *Id.* at ¶44.

Plaintiff's allegations of that he experienced long term pain and facial swelling as a result of Defendant's failure provide dental treatment is sufficiently serious to establish the first prong of an Eighth Amendment failure to treat claim . *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); see also *Irvin v. Owens,* 2011 WL 710471, *2 (W.D.Mich.,February 22, 2011)(citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir.2004))("The objective component of the adequate medical care test is satisfied "'[w]here the seriousness of a prisoner's need for medical care is obvious even to a lay person'")(internal punctuation omitted).

In alleging the second prong of an Eighth Amendment failure to treat claim, deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Farmer, supra,* 511 U.S. at 834. Admittedly, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860, n. 5 (6th Cir.1976). Nevertheless, deliberate indifference is not restricted to cases where there is a complete absence of care, and the fact that an inmate receives *some* level of medical attention does not preclude constitutional scrutiny of the quality of that care. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

Plaintiff alleges that when he first requested dental care after the attack, he was told that the Oakland County Jail had a policy of only pulling teeth. *Complaint* at ¶46. After he submitted several kites to Smith and one grievance, he was first seen by a dentist almost four months after the attack. *Id.* at ¶47. At a minimum, Plaintiff has alleged the second prong of an Eighth Amendment claim by stating that Smith knowingly delayed or withheld treatment for for a serious medical condition. *Id.* Plaintiff also states that on March 22, 2010, multiple teeth were pulled and a followup appointment was made for "new teeth" and additional treatment on April 19, 2010. *Id.* However, he states the followup appointment was deliberately scheduled for the same day as his transfer to MDOC custody, thus preventing him from keeping the appointment for "new teeth" to replace the extracted ones. *Id.* Plaintiff's allegation that a "prescribed plan of treatment" was interrupted also

–15–

states a claim of deliberate indifference. *Farmer,* 511 U.S. at 834.[3] Because Plaintiff has made plausible allegations of Eighth Amendment violations against this Defendant, dismissal is inappropriate.

### IV.     CONCLUSION

For these reasons, I recommend that the motion [Docket #13] be GRANTED as to Defendants Michael Bouchard and Brian Spiker, dismissing these Defendants with prejudice and DENIED as to Donald Sheltrown, Gregory Sako, Craig J. Hanselman, and Greg A. Smith.

---

[3] Although not addressed in Defendants' brief, Plaintiff states that Smith's delay in treatment (after Plaintiff filed a grievance and threatened to file a federal lawsuit) was "premeditated." *Complaint* at ¶¶46-47. However, it is unclear whether Plaintiff is alleging whether treatment was withheld in retaliation for the grievance or that the Jail officials were simply reluctant to pay for Plaintiff's new teeth.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 3, 2013
s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 3, 2013, electronically and/or by U.S. mail.

                                             <u>s/Michael Williams</u>
                                             Case Manager for the
                                             Honorable R. Steven Whalen