UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL RICHARDS,

    Plaintiff,

vs.                                          Case No. 12-12516

DONALD SHELTROWN, GREGORY        HON. AVERN COHN
SAKO, CRAIG HANSELMAN, and GREG
A. SMITH,

    Defendants.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]
## AND
## DISMISSING CASE

### I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. On June 11, 2012, plaintiff Michael Richards, proceeding pro se and without payment of fees, filed a complaint claiming that several defendants violated his constitutional rights while a pretrial detainee in the Oakland County Jail.[2] In essence, Richards alleges that he was placed in an overcrowded section of the jail (the "bullpen") and forced to sleep on a brick floor, where he was eventually assaulted by other inmates for being a "snitch" after coming to the aid of another younger inmate who was previously assaulted. Richards says he was severely injured as a result of the assault; he was hospitalized for

---

[1] The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] According to Michigan's offender tracking information system, Richards was released on parole in June of 2014.

several days before being returned to the jail. He also says he was not given adequate medical care for a tooth that was injured during the assault.

Before the Court is defendants' motion for summary judgment. For the reasons that follow, the motion will be granted.

## II. Background

Shortly after the complaint was filed, the matter was referred to a magistrate judge for all pretrial proceedings. All of the defendants– Michael Bouchard, Brian Spiker, Donald Sheltrown, Gregory Sako, Craig J. Hanselman, and Greg A. Smith–filed a motion for summary judgment (Doc. 13). The magistrate judge properly construed the motion as a motion to dismiss inasmuch as it was directly solely to the allegations in the complaint and no other evidence was filed in support of the motion. On September 3, 2013, the magistrate judge issued a report and recommendation (MJRR), recommending that the that the motion be granted as to Michael Bouchard and Brian Spiker, and that they be dismissed with prejudice. The magistrate judge also recommended that the motion be denied as to Donald Sheltrown, Gregory Sako, Craig J. Hanselman, and Greg A. Smith. In other words, the magistrate judge found that Richards had plead plausible claims against these defendants. Neither party objected to the MJRR. The Court adopted the MJRR on October 31, 2013. (Doc. 30).

Following the adoption of the MJRR, the following defendants and claims became at issue:

Deliberate indifference to safety and retaliation claims against the following corrections officers:

2

- Donald Sheltrown
- Gregory Sako
- Craig Hanselman

Deliberate indifference to medical needs against

- Greg A. Smith, a jail nurse

After the Court adopted the MJRR, substantial efforts were made to find Richards counsel. This included issuance of a stay (Doc. 32). Those efforts were not successful. See Docs. 24, 25, 36. As such, in Pretrial Order No. 2 issued on September 18, 2014, the Court lifted the stay and directed Richards proceed pro se. (Doc. 41). In that order, the Court also directed Richards provide a narrative statement and list of witnesses and exhibits. Richards did so. See Doc. 42.

On October 30, 2014, the Court entered Pretrial Order No. 3 which directed defendants to file a narrative statement, witness and exhibit lists. Defendants did so. See Docs. 45, 46. In defendants' narrative, they stated that they **"intend to file a motion for summary judgment as soon as possible."** (Doc. 44 at p. 5, emphasis added).

On January 9, 2015, the Court held a status conference with the parties. The Court then entered a scheduling order for briefing of the impending summary judgment motion. (Doc. 50). On January 28, 2015, defendants filed the instant motion for summary judgment. (Doc. 51). Richards filed a response. (Doc. 53). The matter is now ready for decision.

### III. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no

3

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do

4

more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," Hager v. Pike County Bd. Of Education, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. Analysis

### A. General Legal Standard

In order to demonstrate liability under § 1983 as to any particular defendant, a Plaintiff must first establish that the defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. See Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Plaintiff also must make a clear showing that the defendant was personally involved in the activity that forms the basis of the complaint. See Rizzo v. Goode, 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, § 1983 liability cannot be premised upon mere allegations of respondeat superior, i.e., supervisory liability; rather, a defendant can only be liable under § 1983 if the Plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Bellamy, 729 F.2d at 421. A supervisory official's awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take

corrective action, is insufficient to trigger § 1983 liability. See Poe v. Haydon, 853 F.2d 418, 429 (6th Cir. 1988). Liability under § 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999).

### B. Deliberate Indifference to Safety[3] - Sheltrown, Sako, and Hanselman

This claim is premised on Richards's assault and whether defendants were deliberately indifferent to his safety which resulted in him being assaulted.

#### 1. Legal Standard

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). " 'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." Miller v. Calhoun Cty., 408 F.3d 803, 812 (6th Cir. 2005) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

To make out claim for relief under the Eighth Amendment for deliberate

---

[3]The conditions of confinement for pretrial detainees are limited by the Fourteenth rather than the Eighth Amendment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); Graham v. County of Washtenaw, 358 F.3d 377(6th Cir. 2004). However, because Fourteenth Amendment claims are analogous to Eighth Amendment claims, the standard applicable to Eighth Amendment claims is used to analyze Richards's claims. See Barber v. City of Salem, Ohio, 953 F.2d 232, 235 (6th Cir. 1992).

indifference to safety, Richards must show facts showing that defendants acted with deliberate indifference to his safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 302-303 (1991). A prison official may be held liable for denying an inmate humane conditions of confinement only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

2. Application

It is undisputed that Richards was assaulted on November 27, 2009. He says the assault was precipitated by his attempt to intervene on behalf of another pretrial detainee after that detainee was assaulted by other jail inmates seven days earlier. Richards says that he asked Sheltrown to move him to a different location on "the very same night" (presumably, on November 19, 2009). Richards does not say what reason, if any, he gave to Sheltrown when he requested that he be moved to another location that night. Richards also says that later that same evening, he submitted a written grievance to Sheltrown which stated:

> I would like to be moved off this cell floor as soon as possible with all these young gang members. They have assaulted other (pre-trial detainees) prisoners as well as robbed them for their store items. I have asked deputy sheriff D. Sheltrown to repeatedly to move me to another cell floor. Now I understand why you people don't have any white inmates on this cell floor. You don't want the white inmates to be assaulted.

However, defendants have no record of this grievance. Although Richards has submitted voluminous documentation to this court, he has failed to produce a copy of this grievance. Assuming arguendo that such a grievance was actually submitted by

Richards, it does not contain any information or facts which would alert Sheltrown or anyone within the jail that Richards faced a substantial risk of harm. Richards's alleged grievance focuses more on the issue of race. Simply put, the record does not support, any finding that Richards specifically advised Sheltrown, Sako or Hanselman that he faced a substantial risk of harm from the inmates who ultimately assaulted him on November 27, 2009 at any time before the assault occurred.

Moreover, as to the objective component of a deliberate indifference claim, Richards must establish that he was held under conditions posing a substantial risk of harm. The record fails to support such a claim. Although Richards alleges that he entered the Oakland County jail with a pre-existing contract on his life due to an incident occurring in the Marquette Branch Prison years earlier, Richards does not allege, and the facts do not show, that the harm which befell Richards at the hands of other inmates on November 27, 2009 was in any way attributable to this alleged pre-existing contract. To the contrary, Richards attributes his assault to well-known gang members who were taking action against Richards because they perceived him to be a 'snitch' due to the fact that he tried to intercede with jail officials on an unidentified pre-trial detainee's behalf. However, Richards has not come forth with evidence to support these allegations. He does not identify this pre-trial detainee. He does not have evidence to suggest that he was held in an unusually dangerous area within the jail when he was assaulted or that his physical or mental condition rendered him more susceptible or vulnerable to assault.

Furthermore, as indicated in the affidavit of Dorothy Hall, an Executive Lieutenant within the Correction Services Division of the Oakland County Sheriff's Office, the area where Richards was assaulted is monitored routinely by Corrections Deputies. This is not an area of the jail where there is a long-standing, documented or pervasive problem with inmate-on-inmate assaults and there are no documented incidents of inmate-on-inmate assaults in this area during the six months preceding or the six months following the assault on Richards on November 27, 2009. Hall also states that there was nothing about Richards's physical or mental condition to suggest that Richards was at an elevated or substantial risk of harm during his incarceration. In short, Richards has not come forth with evidence to create a genuine issue of material fact as to the objective component of his Eighth Amendment claim given the complete lack of evidence that there was an unreasonable risk of injury to Richards during his incarceration.

Richards also fails to meet the subjective component of an Eighth Amendment claim with respect to any of the named defendants. Richards must show that each of the defendants acted with 'deliberate indifference' to his health or safety. Farmer, 511 US at 834. An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, he must also draw the inference. Id. A prison official who was unaware of a substantial risk of harm to an inmate may not be liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it. Id. at 841-42. As such,

the liability of each named defendant must be evaluated individually.

With respect to Sheltrown, the record does not show that Richards informed Sheltrown of any facts which would allow Sheltrown to be aware of a substantial risk of harm facing the Richards. Even accepting Richards's unsubstantiated allegations as true, Richards at the most says that he asked Sheltrown to move him one time – on November 19, 2009- eight days before he was assaulted by other inmates on November 27, 2007. Furthermore, the notice he claims to have given (quoted above) focused almost exclusively upon perceived racial inequality within the jail. This purported notice did not specifically identify any type of a threat to and it did not give Sheltrown or any other deputy in the jail notice that there was a substantial risk of harm to Richards.

As to Sako and Hanselman, Richards does not allege that he had any contact whatsoever with either of these defendants prior to the assault which occurred on November 27, 2009. Richards's allegations against Sako and Hanselman relate solely to events occurring after the assault. Because allegations against Sako and Hanselman are limited to events occurring only after the assault, he cannot meet the objective component of his Eighth Amendment claim. The allegations are specifically limited to events occurring after Richards was assaulted by other inmates on November 27, 2009. Sako and Hanselman are therefore entitled to summary judgment on Richards's deliberate indifference to his safety claim.

Finally, the record, through Hall's affidavit, shows that all placement decisions within the jail are made by the jail classification unit of the Oakland County Sheriff's

Office in accordance with specific policies and procedures governing inmate classification, placement, and movements within the jail. Although Richards infers throughout his complaint that the named defendants made decisions regarding an inmate's classification, cell-placement, and movement within the jail, this allegation is untrue as these determinations were made by individuals other than the named defendants. Specifically, these decisions were made independent of the named Defendants by members of the classification unit based upon criteria set forth in the Oakland County Sheriff's Classification policy and procedure.

Based on the above, defendants are entitled to summary judgment on Richards's claim of deliberate indifference for failure to protect.

### C. Retaliation - Sheltrown, Sako, Hanselman

This claim is premised on Richards's allegation that defendants made placement decisions in retaliation for grievances he filed on various issues within the jail during the course of his confinement.

### 1. Legal Standard

An inmate's placement in the jail is determined by the inmate's security classification. An inmate has no inherent right to be placed in a specific security classification. Sandin v. Conner, 515 US 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In addition, "courts, especially federal courts, should be reluctant to become involved in the internal administration of state prisons." Hanna v. Toner, 630 F.2d 442, 444 (6th Cir 1980). Correctional institutions, including county jails, are accorded considerable latitude in the administration of state prisons. In Jones v. North Carolina

Prisoner's Labor Union, 443 U.S. 119, 126, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Supreme Court discussed the balancing of constitutional rights afforded prisoners against the deference that prison officials must be given in the efficient management of prisons: "Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded to the decisions of prisoner administrators." Accord, Matthews v. Napolean, 2011 U.S. Dist. LEXIS 99988 (E.D. Mich, Aug.16, 2011).

Regarding retaliation, a prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999). To make out a retaliation claim, a Plaintiff must show: (1) the prisoner was engaged in protected conduct; (2) an adverse action was taken against the prisoner that would deter a prisoner of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between he first two elements – i.e. the prisoner's protected conduct motivated, at least in part, the adverse action. Id. at 394. See also Hill v. Lappin, 630 F.3d 468, 471 (6th Cir. 2010). Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision-maker is at issue and the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. Thaddeus-X, supra, at 399. There can be no causation where the defendant is not the decision-maker. Smith v. Campbell, 260 F.3d 1032, 1038 (6th Cir. 2001) (holding that one of the defendants' comments did not demonstrate a causal connection between the plaintiff's filing of grievances and the decision to transfer the plaintiff because it was

12

uncontroverted that the defendant making the commend was not the decision-maker in the case). See also Shehee v. Luttrell, 199 F.3d 295, 301 (6th Cir. 1999) (Plaintiff alleging retaliation failed to prove the necessary element of causation because defendant was not a decision-maker involved with his firing). If a plaintiff can establish causation (i.e. that the decision at issue was motivated, at least in part, by the plaintiff's protected activity) a defendant may show that the same action would have been taken in the absence of protected activity. If a defendant makes such a showing, they are entitled to prevail on a motion for summary judgment. Smith, supra, at 1038 (citing Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 US 274, 287 (1977) and Thaddeus-X, supra, at 399.

### 2. Application

Richards's claim of retaliation against Sheltrown, Sako and Hanselman fails because none of them were the decision-makers behind Richards's classification, cell-placement and cell movements within the jail. Contrary to Richards's allegations in the complaint and other papers, they could not move Richards around within the jail, much less in retaliation for grievances filed. The record shows that decisions regarding Richards's classification, cell placements, and cell movements within the jail were made solely by members assigned to the Classifications Unit of the jail and in accordance with the Sheriff's extensive classification policy. As Hall's affidavit makes clear, she is responsible for the oversight and enforcement of Oakland County Sheriff's Office Policy and Procedure No. 129 entitled "Inmate Classification" and Administrative Order No. 99-S-002 entitled "Inmate Movement Based on Classification System". The

classification system is comprised of Sheriff Deputies and civilians personnel who are specifically assigned to the Classification Unit for the purpose of ensuring practices set forth in the Classification policy are followed. Each and every classification, cell-placement, cell-movement and housing decision made within the Oakland County jail must be specifically reviewed and approved by specifically-designated members of the classification unit in accordance with the Classification Policy. At no time did Sheltrown, Sako or Hanselman work in the Classification Unit of the Corrective Services Division. As such, they did not have the authority or discretion to make classification decisions, cell-placement, or cell movement decisions regarding any inmate within the Oakland County jail without the express approval of an individual specifically assigned to the Classification Unit during the entire period of Richards's confinement from October 23, 2009 through April 19, 2010. Although Richards speculates that he was moved around at the behest of Sheltrown, Sako and Hanselman as a form of retaliation for grievances he filed, his allegations are disproved by Hall's affidavit.

Moreover, Hall's affidavit sets forth administrative reasons for each of Richards's cell placements within the jail during the time-frame complained of by Richards within his complaint (i.e. from December 2, 2009 through March 10, 2010). Even assuming that Richards could provide evidence to create a genuine issue as to whether defendants were the decision-makers when it came to his placement within the jail, Hall's affidavit shows that there were other objectively verifiable reasons for each of his placements and movements within the jail.

In sum, Richards has not carried his summary judgment burden with respect to

14

his First Amendment retaliation claim. Defendants are entitled to summary judgment on this claim.

### D. Deliberate Indifference to Medical Need - Smith

This claim is premised on Richards's allegation that Smith failed to provide him with adequate medical care for his tooth which was broken during the November 27, 2009 attack. Richards alleges that Smith's actions caused him long term facial pain and swelling. It is considered a "failure to treat" claim.

#### 1. Legal Standard

The Sixth Circuit has explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference to her serious medical needs:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

Broyles v. Corr. Medical Servs., Inc., 478 F. App'x 971, 975 (6th Cir.2012) (internal citations omitted).

The Sixth Circuit has also cautioned that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize

15

claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir.1976).

## 2. Application

In support of the motion for summary judgment on Richards's claim against Smith, the record contains the affidavit of Mark Morrissey, a Health Service Administrator for Correct Care Solutions which provides medical care services to inmates with the Oakland County Jail. Morrissey conducted a review of Richards's medical records and summarized his findings in an affidavit. Richards's medical records are also part of the record. Regarding the care for Richards's tooth, the record shows the following:

On December 12, 2009, Richards submitted a sick-call slip complaining of a loose tooth, swollen gums and some pain that Richards attributed to the assault occurring on November 27, 2009. Although Richards was evaluated by medical professionals within the clinic on at least five different occasions between the time of his discharge from Pontiac Osteopathic Hospital on December 2, 2009, December 12 was the first time Richards mentioned or complained of tooth related pain.

On December 14, 2009, Richards was taken to two different outside medical treatment facilities to address issues contained in the hospital discharge instructions.

On December 18, 2009, Richards was evaluated in the jail clinic by Dr. Kopin, DDS, regarding his complaint relating to tooth # 7.

On December 21, 2009, Richards was taken to an outside medical provider for

treatment.

Between December 21, 2009 and January 8, 2010, Richards submitted seven different sick call slips and/or grievances to the clinic. These slips/grievances dealt with a request that his Zantac be changed to once daily instead of twice daily (December 24); a repeat sick call slip re: the same Zantac issue (December 26), a sick call slip requesting a second mattress (December 28, 2009), a sick call slip requesting that pain medications be re-instated – they had been stopped when Richards was found to be hoarding them); a sick call slip requesting that Zantac be discontinued and requesting pain medications; a sick call slip for a blood pressure check (January 4, 2010); a sick-call slip complaining about losing weight, requesting pain medications and a blood pressure check (January 5, 2009).

On January 8, 2010, Richards was again examined within the jail clinic by Dr. Kopin. His notes indicate that he would look into scheduling an outside appointment for treatment of Richards's tooth # 7.

On January 12, 2008, Richards was again examined by Dr. Kopin. Smith, a nurse and employee working in the Oakland County jail clinic, obtained Richards's signature on a form requesting Richards's dental records from the Michigan Department of Corrections as Richards reported having previous work performed at Marquette Prison.

Although Richards's medical/dental records were requested from Marquette Prison, they never were sent to the County by MDOC in response to Richards's written authorization form. As such, Richards was taken for examination and treatment by an

outside dentist, Dr. Rita Marroghi, on March 22, 2010. Dr. Marroghi determined that tooth #7 was non-restorable and the tooth was extracted. Richards was fitted with a temporary bridge and was told to return in four weeks for a final bridge. Smith scheduled a follow-up appointment for April 19, 2010.

Richards was sentenced on April 15, 2010 and transferred to MDOC custody on April 19 so he did not have the follow up appointment. However, a medical transfer sheet was prepared and sent to the MDOC indicating that follow-up care was needed for tooth #7.

While Richards was in the custody of Oakland County, from October 23, 2009 to April 19, 2010, a total of $35,343.44 was paid for his medical care, $2,106.00 of which was spent for his dental care by Dr. Marroghi.

Finally, while Richards alleges Smith told him that Oakland County has a policy that it only pulls teeth, no such policy is in the record. Rather, defendants say that dental care that cannot be provided by dental care specialists within the jail is referred to outside medical professionals, as it was with Richards.

The record show that Smith had limited involvement in Richards's dental care—Smith obtained Richards's signature on a medical authorization form and scheduled a follow up appointment. Neither action rises to the level of deliberate indifference and no reasonable juror could find otherwise. To the contrary, the record shows Richards received care for his tooth, as well as other ailments and injuries, during his time in custody with Oakland County.

18

### E. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Having found that Richards has failed to establish a genuine issue of material fact as to whether defendants violated his constitutional rights, it is not necessary to consider whether defendants are entitled to qualified immunity.

### V. Conclusion

In the end, Richards's allegations in the complaint, while sufficient to survive a motion to dismiss, are not sufficient to overcome summary judgment. The record, including the complaint and Richards's other filings, simply does not support Richards's claims of mistreatment by any of the defendants.

Defendants' motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

_____
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 4/17/15
Detroit, Michigan